The opinion of the Court was delivered by
Withers, J.
Thomas Godbold, who died in 1825, directed by his will, that his estate should be kept together until 1830 ; that his negroes should then be appraised, by three freeholders, with a view to divide them into seven parcels, one of which parcels he lent to his wife, during her natural life — and one he lent to each of his six children for life, remainder to issue of his or her body, and in default thereof, to be equally divided *509 among his “surviving heirs;” and the share lent to his wife was, at her decease, to be equally divided among his surviving heirs, share and share alike. Before 1830, Charles, one of the legatees and a son of the testator, died, leaving no issue, whereby his share was cast, by the will, upon the “ surviving heirs,” as remaindermen. In 1^30, (January,) the negroes were divided into six parcels, and not seven, and his widow, Sarah Godbold, received one parcel, being a sixth, among them Phoebe and child. She sold Phebe and child in April, 1830, to E. B. Wheeler, for the full value of an absolute not a life estate, and from Wheeler, by sheriff’s sale, Scarborough, the defendant’s intestate, acquired Phebe and her issue. At the time of the division, a considerable aggregate of debts, (perhaps as .much as seven thousand dollars,) resting upon the estate of Thomas Godbold, in the hands of David S. Harllee, remained unsatisfied, one at least, in favor of Gibson, being in execution. The executor would not consent to part with the' legal dominion over the negroes; nor ,with the possession, except on terms: whereupon, the legatees, the widow included, all of full age, the married females represented by their husbands, entered into a written stipulation, whereby they acknowledged that they received the property allotted to them individually by consent of the executor, as a loan from him, and that it should, at all times thereafter, be subject to his control and management, and to sale by him, or the sheriff, to meet any judgment, execution, debt, or demand against the estate, then known or afterwards to appear, and costs, charges and expenses incident thereto: and they engaged to deliver the negroesi to him at any time, when he required it, or to account to him, in cash, for the full value: the partition then agreed upon was to become confirmed only when all debts for which the estate was liable, with costs and charges, were fully paid and satisfied.
The share assigned to the widow, Sarah, and' received by her, was estimated at two thousand one hundred and seventy-eight dollars; she agreed to pay a portion, perhaps about one *510 thousand dollars, of the execution in favor of Gibson; each of the other legatees was to pay a portion of the debts resting upon the testator’s estate. There was evidence that the widow said, at the time, she could not pay without selling property, and announced a design to sell Phoebe and child to Wheeler, who owned the woman’s husband. The executor said, sell property then. It was also in evidence, that on the very occasion, when the parties were engaged in making the division, John M. Godbold sold some negroes he received to a creditor of the estate, for full value, and one of these plaintiffs bought them from that creditor. There was evidence, that Ilaselden, who married one of the testator’s daughters, sold to Evans, who had married another, on the occasion of the partition, a little negro, assigned to his wife’s share. There was evidence calculated to show, that the executor said the parties who could not otherwise pay the portions of debt allotted to them, must sell property for that purpose; and from the presence of the executor, and all the legatees, from what was said by some, and done by others, a question of fact was presented, on the trial, whether each tenant for life, legatees under the will, was authorized by the executor with the assent, express or implied, of all the other tenants for life and contingent remaindermen, to sell the absolute estate in so much of the property allotted as might be necessary to pay the apportioned debt, left and existing as a common burthen, to do which would, by some other process, have involved a sale of property. On the 5th April, 1830, Gibson’s execution was credited with two hundred and twenty-five dollars, as paid by Sarah Godbold, the widow.
It was under these circumstances the- jury were instructed, that in all the negroes received by the widow, and vendor to Wheeler, she received only a life estate, and a purchaser from her could gain no more than her life estate against these plaintiffs, who are remaindermen since her death in 1853: that Charles Godbold’s share was limited to his brothers and sisters, and the widow took no part of it — that is, she was not a *511 “surviving heir,” under the will; that she must be regarded as having received any interest derived from Charles’ share, as she did the ^est of the interest she took, that is, under the will, for life only; and that the assent of the executor to the vesting of her legacy or to the sale of Phoebe and child, was not an assent authorizing her to sell more than her life estate.
The Court of Errors have been called upon to inquire and determine, whether these instructions were correct.
When Charles Godbold died, in 1827, without issue, his share of negroes, one-seventh, then not set apart, fell, under the terms of the will, to such remaindermen as belonged to the class of “surviving heirs” of the testator. This Court entertains no doubt that the widow was one of them; and it is content to refer to the reasoning, and authorities cited, which tend to this conclusion, to be found in Evans and others vs. Godbold and others, 6 Rich. Eq. 26.
Then when the partition, such as it was, was made in 1830, if a share had been severed, as that which had been bequeathed to Charles Godbold, the widow, (who is the defendant’s, that is, Wheeler’s, vendor,) would have been entitled to a portion of such share, that is, one-sixth, in absolute right; and if she had sold that portion to Wheeler, he would have purchased the entire interest in so much. Such severance, however, as for Charles’ share, and such distribution of it, were not made. Nothing was said about it. The division was made as though such interest in Charles had never existed; the division was into six, not seven parts. On the Circuit, it was ruled as a judicial conclusion, that this operated to extinguish the absolute interest in remainder, of the widow, in' Charles’ share, by merging it into the life interest which was taken by her by direct bequest. This conclusion depended upon negative, not positive evidence; for nothing was said, in the written agreement or otherwise, showing such purpose. .We think this was properly examinable by the jury. It may have been a consideration leading to an authority by all to each to sell for *512 payment of debts assigned, as defendant urges in another branch of his defence. Suppose it should be found by the jury, that the widow did not surrender her absolute interest in remainder in her portion of what was Charles’ share, that is, in one-sixth of one-seventh of the negroes, or one-forty-second part of the whole, then that absolute interest in remainder, not being severed, was diffused among the whole of the negroes assigned to her, inhered in each arid every of them, and, by virtue of that particular, absolute, but undivided interest, she was tenant in common (so to speak) with other remaindermen,! that is to say, with the plaintiffs, if they be such, and upon alienation introduced the vendee, that is, the defendant, into that relation. Pretermitting all that might be said, upon such a state of facts, upon the question of nonsuit in an action of trover by one tenant in common against another, it is enough for the present to know that the case may be capable of such a phase, in the hands of the jury, as may show a certain existing legal right and interest in the defendant, operating at least to reduce the damages — the benefit of which he has not had on the Circuit. ,
But there is another branch of this case to be considered, and it is independent of the question, whether the executor assented to the legacies or not. If the executor and the legatees agreed that the widow might sell an absolute right, and the sale to Wheeler by her was according to and in pursuance of the agreement, then the sale conveyed a valid title to Phoebe and child, and all those of the present plaintiffs who were sui juris at the time of such agreement, are bound by it, and cannot now dispute the right transferred by the sale. The children of Mrs. Haselden, afterwards Mrs. Munro, who. are co-plaintiffs, may be capable’of disaffirming the agreement of their ancestor, authorizing the sale (which will be the effect of the death of the husband of a legatee in remainder, feme covert, before the interest in remainder accrue,d to the wife;) but those of the plaintiffs who are not in that condition, are bound by the *513 agreement, authorizing the sale in question, if, they ever made it. Assuming such agreement made, binding upon some of the plaintiffs and not upon others, the question may arise, how the whole can become joint plaintiffs in trover. No verdict can be given for those who have no right, to damages, and the joint plaintiffs cannot be severed in a verdict.
At the time of the division the parties were capable to contract, and confer an authority upon each other, the executor assenting, to sell a negro absolutely, to pay debts — all the negroes were liable to creditors — all were under the lien of Gibson’s execution, and any other that may have existed: negroes were sold, on the day of division, by a life tenant, for full value, with the knowledge, it is testified, of executor and all others in interest, and a debt of the testator deducted from the purchase money: the widow’s share little exceeded two thousand dollars, and she undertook to pay one thousand dollars of debt — the remaindermen, the plaintiffs, have received from her estate all she got in the partition with increment, except the negroes in' question, sold to Wheeler — the executor stipulated that the possession was granted as a loan, and that he retained the power to reclaim any negro and to sell the-same for the payment of debt or other proper demand against him, and could, therefore, authorize another to do what he could himself lawfully do — that was done by the widow which he could have done by the agreement, and the money was applied in exoneration of the entire estate and of the executor —from all which, it is the judgment of this Court, the defendant should have been permitted to draw an argument for the jury on the question, whether the sale to Wheeler, by the widow, was not by virtue of competent and sufficient authority in her vested, and now binding upon these plaintiffs, or some of them.
As to the requirements of the executor’s law, that to make valid sales, he shall derive authority from the will, the Ordinary or some competent Court, it is enough to say, that this *514 course may be dispensed with by those who are competent to make a valid agreement to that effect, by proper age and intellectual capacity, and whom the provisions of that law were intended to protect. Yet the jury were instructed that, as matter of law and fact, the widow could sell' no more than her life estate. In this there was error, and,
It is ordered, that a new trial be granted.
Johnston, Dunkin, Dargan and Wardlaw, CO., and Wardlaw and Whitner, JJ., concurred.

Motion granted.